UNITED STATES, Appellee,

v.

Donald B. WARDLE, Staff Sergeant,
U.S. Air Force, Appellant.

No. 02–0312.

Crim.App. No. 34140.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 5, 2002.

Decided March 19, 2003.

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE and BAKER, JJ., joined. ERDMANN, J., filed a separate opinion concurring in the result, in which EFFRON, J., joined.

For Appellant: *Major Maria A. Fried* (argued); *Colonel Beverly B. Knott* and *Major Jeffrey A. Vires* (on brief).

For Appellee: *Major Linette I. Romer* (argued); *Lieutenant Colonel Lance B. Sigmon* (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, Appellant was convicted of eight specifications of larceny of military property, four specifications of forgery, and one specification of money laundering, in violation of Articles 121, 123, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921, 923, 934 (2002). The convening authority approved a sentence of a bad-conduct discharge, 30 months' confinement, and reduction to pay grade E–2. The Air Force Court of Criminal Appeals affirmed the findings and sentence, and we granted review of the following issue:

WHETHER APPELLANT'S PRETRIAL CONFINEMENT WAS ILLEGAL BECAUSE THE DECISION TO CONFINE HIM WAS BASED ON CONCERNS THAT HE WOULD COMMIT SUICIDE RATHER THAN THE CRITERIA SET FORTH IN R.C.M. 305(h)(2)(B)(iii) AND

THAT LESSER FORMS OF RE-STRAINT WERE NOT CONSIDERED. For the reasons set forth below, we affirm.

## FACTS

Appellant learned on January 10, 2000, that he was under investigation for stealing approximately $70,000 from the Government. That same day, Appellant's commander, Major Elizabeth May, called him and ordered him to report for duty the following morning. Appellant failed to report as instructed, and instead checked himself into a local hotel where he slit his wrists. After Appellant returned home of his own volition, his unit took him to the hospital to be treated for the wounds on his wrists. Appellant was then transferred to the Veteran's Administration (VA) hospital for a two week psychiatric observation and assessment.

On the day of Appellant's release from the VA hospital, Major May ordered him into pretrial confinement. In the memorandum explaining her decision, Major May wrote:

> I believe that pre-trial confinement at Tyndall AFB is appropriate in this case. I do not believe lesser forms of restraint are adequate. SSgt Wardle has demonstrated he will disregard orders, as he demonstrated by not reporting to my office as ordered at 0700 hours on 11 January 2000. Any other form of restraint would require SSgt Wardle abiding by some form or [sic] order by me. It is foreseeable SSgt Wardle will not appear at trial if not placed in pretrial confinement. He fled and then attempted suicide soon after learning of the investigation and nature of allegations against him. I anticipate SSgt Wardle will be tried by a court-martial. My experience with other members facing a court-martial is that the stress becomes even greater as the process draws closer to trial. Since SSgt Wardle fled at this early stage, I feel the potential exists he will not appear for trial if not placed in pre-trial confinement.

She subsequently testified as to her added concern that Appellant had formulated an escape plan and had set aside a significant amount of money. The magistrate reviewing Major May's order determined that confinement was warranted because Appellant was a risk to himself and because less severe forms of restraint were inadequate to insure his presence at trial.

Appellant moved for relief at trial, contending that the magistrate abused his discretion by continuing Appellant's pretrial confinement. The military judge heard evidence on the issue of Appellant's pretrial confinement, and concluded that such confinement was proper.

## DISCUSSION

■ This Court reviews a military judge's ruling on the legality of pretrial confinement for abuse of discretion. *United States v. Gaither*, 45 M.J. 349, 351–52 (C.A.A.F.1996). There is an abuse of discretion when a military judge applies an erroneous view of the law. *United States v. Taylor*, 47 M.J. 322, 325 (C.A.A.F.1997); *United States v. Sullivan*, 42 M.J. 360, 363 (C.A.A.F. 1995). An appellate court "should limit its review to the facts [that were] before the deciding official." *Gaither*, 45 M.J. at 351. Applying these principles, we conclude the military judge did not abuse his discretion for the reasons set forth below.

The military judge in this case made the following findings of fact: "[T]he court incorporates by reference and finds by a preponderance of the evidence as facts the facts set forth by the government in paragraphs 1 through 5 of its response[.]" Among the facts identified in the Government's brief that the military judge incorporated were the following:

> Early on the morning of 10 Jan 00, SSgt Wardle checked into a Pensacola area hotel using his government charge card. He failed to report for duty as instructed at 0700 hours. Sometime that morning, he cut his wrists. He remained at the hotel that morning and most of the afternoon, never informing his spouse or his unit regarding his whereabouts. At approximately 1840 hours, SSgt Wardle returned home. SSgt Wardle's wife saw SSgt Wardle's wrists and also found a note in his wallet stating, "Please forgive me again. I

love you." She contacted the unit, who brought SSgt Wardle to the hospital. SSgt Wardle required 19 stitches to close the wound on his wrist. After treatment at Pensacola NAS, SSgt Wardle was admitted to the VA Hospital at Gulfport, Mississippi for observation and a suicide watch. He remained at the VA hospital in a secure ward until 24 Jan 00. SSgt Wardle's discharge diagnosis was acute depression.

. . . .

Maj May placed SSgt Wardle into pretrial confinement because she had reasonable grounds to believe that SSgt Wardle stole money from the government and because SSgt Wardle posed a threat to himself and a risk for flight. Specifically, SSgt Wardle failed to appear for duty on 10 Jan 00 as ordered. Additionally, he tried to kill himself. Maj May reasoned that, based upon her experience with past members facing trial, SSgt Wardle would face even greater stress as the court martial process progressed, increasing the chance that he would flee or again attempt to harm himself.

A neutral and detached magistrate, Col James Foster, conducted a review of SSgt Wardle's pretrial confinement on 25 Jan 00. After reviewing the evidence in the case and hearing the testimony of Maj May and [a special agent], Col Foster recommended continuation of pretrial confinement. Col Foster found that reasonable grounds existed to believe SSgt Wardle committed the offenses of larceny and forgery. Further, Col Foster determined, based upon SSgt Wardle's diagnosis of depression and suicide attempt, that lesser forms of restraint were inadequate to ensure SSgt Wardle's appearance at trial. The military judge also endorsed the reasoning set forth in the Government's brief, determined that a preponderance of the evidence supported the magistrate's decision, and held that the magistrate did not abuse his discretion in finding Appellant's pretrial confinement to be appropriate.

Article 10, UCMJ, 10 U.S.C. § 810 (2002), allows pretrial confinement "as circumstances may require" for persons subject to and charged under the UCMJ. Rule for Courts–Martial 305 states that an accused may be held in pretrial confinement if his commander has probable cause, or reasonable grounds, to believe that:

(i) An offense triable by a court-martial has been committed;

(ii) The prisoner committed it; and

(iii) Confinement is necessary because it is foreseeable that:

(a) *The prisoner will not appear at trial, pretrial hearing, or investigation,* or

(b) The prisoner will engage in serious criminal misconduct; and

(iv) *Less severe forms of restraint are inadequate.*

Rule for Courts–Martial 305(h)(2)(B)[hereinafter R.C.M.] (emphasis added). Germane to the issue at hand is the rule's endorsement of pretrial confinement in view of a likelihood that "[t]he prisoner will not appear at trial, pretrial hearing, or investigation" and the inadequacy of less severe forms of restraint.

In adopting as his own the facts described above, the military judge in effect confirmed that Appellant was a flight risk and that less severe forms of restraint were inadequate. The facts adopted by the military judge that specifically addressed flight risk and the inadequacy of less severe forms of restraint were as follows:

Early on the morning of 10 Jan 00, SSgt Wardle checked into a Pensacola area hotel [and] *failed to report for duty* as instructed at 0700 hours. He remained at the hotel that morning and most of the afternoon, *never informing his spouse or his unit regarding his whereabouts.*

. . . Maj May placed SSgt Wardle into pretrial confinement because she had reasonable grounds to believe that SSgt Wardle . . . posed . . . a *risk for flight.* . . . Maj May reasoned that . . . SSgt Wardle would face even greater stress as the court martial progressed, *increasing the chance that he would flee.*

A neutral and detached magistrate . . . determined that *lesser forms of restraint*

*were inadequate to ensure SSgt Wardle's appearance at trial.*

These adopted facts reveal the reasonable concern that Appellant, having already fled once upon learning of the investigation into his alleged theft, might again flee and fail to appear at trial. The facts further reveal the conclusion that this risk rendered less severe forms of restraint inadequate. As R.C.M. 305 authorizes pretrial confinement on these grounds, the military judge properly, albeit by incorporating the Government's brief, approved Appellant's pretrial confinement.[1]

To be clear, suicide and flight risk were not entirely independent factors in this case. A predominant concern throughout the proceedings was that Appellant's suicide attempt rendered him a flight risk. This concern characterized Major May's decision, the magistrate's review, and the military judge's ruling. However, we need not reach the issue of whether suicide risk in this case, or under other circumstances, would warrant pretrial confinement. In light of the other factors cited by Major May, including the amount of money Appellant had taken and his failure to report to duty at 0700 (which was only later followed by an attempted suicide with an undetermined predicate), Appellant established himself as a flight risk within the meaning of R.C.M. 305.

## CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

ERDMANN, Judge, with whom EFFRON, Judge, joins (concurring in the result):

I concur in the result. Under the facts presented in this case, however, I would rely on other grounds to affirm the decision below. A reasonable belief that an accused will commit suicide before trial is a legitimate factor to be weighed, along with all other evidence, in determining whether pretrial confinement is appropriate.

Rule for Courts–Martial 305 [hereinafter R.C.M.] contemplates three levels of review after an individual is placed in pretrial confinement. Initially, the commander ordering the confinement is required to determine whether pretrial confinement should continue, applying the criteria set forth in R.C.M. 305(h)(2)(B):

The commander shall direct the prisoner's release from pretrial confinement unless the commander believes upon probable cause, that is, upon reasonable grounds, that:

(i) An offense triable by a court-martial has been committed;

(ii) The prisoner committed it; and

(iii) Confinement is necessary because it is foreseeable that:

(a) The prisoner will not appear at trial, pretrial hearing, or investigation, or

(b) The prisoner will engage in serious criminal misconduct; and

(iv) Less severe forms of restrain are inadequate.

Major Elizabeth May found that she had reasonable grounds to believe that an offense (larceny) had been committed and that it had been committed by Appellant. She specifically found that "he is a threat to himself *and* is a flight risk." (Emphasis added.) In her memorandum in support of pretrial confinement, Major May stated:

It is foreseeable SSgt Wardle will not appear at trial if not placed in pre-trial confinement. He fled and then attempted suicide soon after learning of the investigation and nature of allegations against him. I anticipate SSgt Wardle will be tried by court-martial. My experience with other members facing a court-martial is that the stress becomes even greater as the process draws closer to trial. Since SSgt Wardle fled at this early stage, I feel the potential exists he will not appear for trial if not placed in pre-trial confinement.

---

1. We note, however, that while the military judge's incorporation by reference of the facts listed in the Government's brief lawfully sustained Appellant's pretrial confinement on the

bases of flight risk and the inadequacy of lesser forms of restraint, the military judge's identification of these bases could have been more apparent.

R.C.M. 305(i)(2) provides that a neutral and detached officer (magistrate) must conduct a probable cause review as to whether pretrial confinement should continue. On June 27, 2000, a magistrate reviewed the circumstances of Appellant's pretrial confinement. The magistrate found that continued pretrial confinement was appropriate. In his "MEMORANDUM," however, the magistrate relied solely on the fact that Appellant posed a danger to himself:

7. FINDINGS: APPROPRIATENESS OF CONFINEMENT. I do find continued pretrial confinement is required under the criteria set forth under RCM 305(h)(2)(B) for the following reasons:

    a. SSgt Wardle presents a risk to himself. SSgt Wardle has been diagnosed with severe depression and has made a serious attempt at suicide. It is quite likely SSgt Wardle will repeat his attempt to harm himself.

    b. Less severe forms of restrain are inadequate to protect SSgt Wardle and insure his appearance at a trial, pretrial hearing, or further investigation.

Appellant filed a motion alleging that he could not be confined solely because he was a suicide risk and sought release from pretrial confinement on that basis. On March 27, 2000, the military judge held a hearing on the motion. At that hearing Major May clearly expressed her belief that there was a foreseeable risk of Appellant's non-appearance, both in terms of flight risk and a suicide risk. Major May testified as follows:

He was released because the VA hospital felt like they could no longer provide any services to him, and I was unable to get him into any kind of Air Force facility as far as on an inpatient basis. At that point, when I realized what the situation was, that I was at an impasse, he was going to be released and I had no confidence that

he had been given a proper assessment or the tools that he needed to be a safe risk as far as being out. And you've got to remember, though, I have several responsibilities as a commander, and one of the responsibilities is to ensure that Staff Sergeant Wardle is going to meet trial. Well, if he kills himself then he is not going to trial, and I consider that a flight risk and we can use it synonymously if you want. Committing suicide means you are a flight risk because you are not going to show up for trial.

. . . .

I had concern that he was a flight risk for several reasons. First of all, I didn't know how much money he had sitting in any accounts anywhere in the world. For all I knew, he had $80,000 to $100,000 in a Swiss bank account. For all I knew, he had an escape plan. I didn't know.

But first and foremost, he had already demonstrated an ability to do harm to himself, which could have resulted in suicide, which would have equated directly to him being a flight risk and not showing up for trial. So I guess my first and most primary reason for pretrial confinement was the fact that he may not show up for trial if he was released—if he was not put in pretrial confinement because he may either flee or he may do harm to himself again. Because the medical community gave me nothing to go on, I had no choice but to ask for pretrial confinement.

The military judge made a number of factual findings and legal conclusions regarding Appellant's pretrial confinement. The military judge also incorporated into his findings the Government's March 3, 2000, Response to the Defense's Motion for Appropriate Relief.[1]

The "FACTS" section of the Government's brief provides, in part, as follows:

---

1. One, the court incorporates by reference and finds by a preponderance of the evidence as facts the facts set forth by the government in paragraphs 1 through 5 of its response, dated 3 March 2000, to the defense motion for appropriate relief.... In deciding whether the pretrial confinement reviewing officer, Colonel Foster in this case, abused his discretion, I reviewed the matters outlined in his decision memorandum dated 27 January 2000, and the attachments thereto. Having reviewed the matter Colonel Foster considered, as well as the brief submitted by counsel on this motion, I adopt as my own reasoning, the reasoning set forth by the prosecution in its brief.

Major May placed SSgt Wardle into pretrial confinement because she had reasonable grounds to believe that SSgt Wardle stole money from the government and because SSgt Wardle posed a threat to himself and a risk of flight. Specifically, SSgt Wardle failed to appear for duty on 10 Jan 00 as ordered. Additionally, he tried to kill himself. Maj May reasoned that, based upon her experience with past members facing trial, SSgt Wardle would face even greater stress as the court martial process progressed, increasing the chance that he would flee or again attempt to harm himself.

Col Foster determined, based upon SSgt Wardle's diagnosis of depression and suicide attempt, that pretrial confinement was appropriate. He also determined that lesser forms of restraint were inadequate to ensure SSgt Wardle's appearance at trial.

The "ARGUMENT" section of the Government's brief provides, in part, as follows:

Defense counsel argues that confining SSgt Wardle for his own safety is an impermissible reason under R.C.M. 305(h)(2)(B) to place or continue SSgt Wardle in pretrial confinement. This argument ignores the language of R.C.M. 305(h)(2)(b)(iii)(a) – that the prisoner will not appear at trial. To be blunt, if SSgt Wardle commits suicide, he will not appear at trial. The question is whether pretrial confinement is necessary, as opposed to some lesser forms of restrain, to ensure his appearance at trial.

Maj May had ample reason to place SSgt Wardle into pretrial confinement. SSgt Wardle made a very serious suicide attempt shortly after learning that OSI was onto his theft scheme. Maj May testified at the pretrial confinement hearing that she did not believe SSgt Wardle, while at the VA Hospital, received adequate counseling or treatment to deal with the stress leading to the suicide attempt. Consequently, Maj May believed that SSgt Wardle presented a threat to himself and a threat not to appear at trial. She did not feel lesser forms of restraint were adequate, as she no longer trusted SSgt

Wardle to appear at trial or not to harm himself. Her belief that lesser forms of restraint were inadequate was reasonable under the circumstances. SSgt Wardle, who was apparently a reliable NCO before his suicide attempt, committed an act that was wholly out of character and impulsive. Short of watching SSgt Wardle 24 hours a day, Maj May had no way of assuring SSgt Wardle would not again attempt suicide if the stress of the trial process became to[o] great for him.

Col Foster, the pretrial confinement hearing officer, did not abuse his discretion in considering SSgt Wardle's risk to himself as a factor in continuing pretrial confinement. Col Foster, addressing the appropriateness of confinement, did not state specifically that SSgt Wardle was a risk not to appear at trial. However, he did find that it was quite likely that SSgt Wardle would repeat his attempt to harm himself if released. This finding speaks directly to the issue of whether or not SSgt Wardle would appear at trial, and was a proper consideration. Simply stated, if SSgt Wardle harmed himself, he would not appear at trial. For a military member facing court-martial charges, suicide is the most definite and permanent form of flight.

The remainder of the Government's brief was devoted to a further analysis of Appellant's suicide risk.

Where I differ with the majority is that I do not read the magistrate's determination or the military judge's decision broadly enough to include "risk of flight" as the sole or even primary basis for concluding that there was a foreseeable risk of non-appearance that would justify Appellant's pre-trial confinement.

The record reveals that Major May initially based her decision to place Appellant in pretrial confinement on the grounds that there was a foreseeable risk of non-appearance as a result of both risk of suicide and risk of flight. The record also reflects that while the magistrate heard evidence of the risk of flight relied on by Major May, his

written ruling relied only on the risk of suicide or self-harm.

While the military judge also heard evidence of the flight risk relied on by Major May, both his findings and the "reasoning" in the Government's brief, which he adopted as a basis for his decision, relied on suicide risk. The main thrust of the Government's brief, as adopted by the Military Judge, was that "suicide is the most definite and permanent form of flight." The military judge's reliance on Appellant's suicide risk is further evidenced by the fact that when the sanity board, convened at the order of the military judge, found that Appellant no longer posed a serious risk of suicide, the military judge ordered his release from pretrial confinement.

Reliance on suicide risk as the primary factor supporting a foreseeable risk of nonappearance does not change the result. Although a question of first impression for this Court, the risk of suicide may provide a lawful and proper factor supporting pretrial confinement based upon risk of non-appearance in appropriate cases. As in this case, a servicemember who is awaiting trial may have suicidal ideation. Although the requirements for a mental health referral and care under these circumstances are extremely important and should proceed unimpeded, those procedures are not incompatible with the needs of the military justice system and should not bar legitimate pretrial restraint decisions by a commander.

Pretrial confinement is appropriate where it is foreseeable that the accused will not appear at trial, pretrial hearing or an investigation. R.C.M. 305(h)(2)(B)(iii)(a). Aside from the fact that a person who commits suicide will not appear at a trial or other proceeding, it may be appropriate under the facts of a particular case to infer from a suicide attempt that an accused is unwilling to face the consequences of his action and stand trial by court-martial. In those instances where a person is willing to take his or her own life as the result of criminal charges being preferred against him/her, a commander may also reasonably conclude that there is a foreseeable risk of non-appearance from less drastic options such as flight.

The Discussion accompanying R.C.M. 305(h)(2)(B) itemizes illustrative factors that should be considered in analyzing the necessity for pretrial confinement. Included in these factors is the "mental condition" of the accused. Suicidal ideation is the very type of mental condition that the Discussion indicates should be considered as a factor in determining whether pretrial confinement is appropriate. Commanders, reviewing magistrates, and military judges should consider an accused's mental condition, including the likelihood of suicide, in determining that it is unlikely the accused will be present for trial or other proceedings and that pretrial confinement is warranted.

Appellant argued in this case that the Air Force Court of Criminal Appeals, in *United States v. Doane*, 54 M.J. 978 (A.F.Ct.Crim. App.2001), found that risk of suicide is not an appropriate basis for pretrial confinement. He asserted that without a finding of "risk of flight" the pretrial confinement in his case was illegal. The basis for the majority decision in *Doane* was that suicidal ideation was a matter appropriate for a mental health referral and was therefore not appropriate to consider in a pretrial confinement determination. *Id.* at 983. The *Doane* decision is overly restrictive. A command's interests in the mental health referral of servicemembers and the legitimate ends of pretrial restraint in the military justice system are not mutually exclusive. Both can operate in tandem, giving effect to the goals of both.

The Air Force Court in *Doane* correctly identified that a mental health referral is necessary when an individual exhibits suicidal ideation. However, if that individual is also being considered for pretrial confinement, the military justice requirements should not be abated, but should continue, taking into consideration the mental health process. I would not adopt the broad holding in *Doane* that "preventing an accused from committing suicide is not a valid basis for ordering that accused into pretrial confinement." 54 M.J. at 983. A reasonable belief that the accused presents a risk of

suicide is an appropriate factor, along with other relevant evidence, upon which to determine whether an accused will be present for trial. These factors, in conjunction with meeting the remaining requirements of R.C.M. 305(h)(2)(B), will support imposition of pretrial confinement.

While the magistrate and the military judge relied on suicide risk as a basis for their determinations, the record reflects that they had evidence of flight risk as relied upon by Major May before them in their considerations. Therefore, this case presents a situation where there was evidence of a foreseeable risk of non-appearance based primarily upon suicide risk and also upon risk of flight. Under these circumstances, I would find that "suicide risk" constitutes an appropriate factor to consider in determining that pretrial confinement is warranted because it is probable the accused will not appear for trial. R.C.M. 305(h)(2)(B)(iii)(a).[2]

I would affirm the decision below on that basis.

**2.** As this case does not present a situation of where "suicide risk" is the only evidence that the accused would not appear for trial, that issue must be reserved for another day. Nor is it necessary to determine whether attempted suicide is "serious criminal misconduct" within the meaning of Rule for Courts–Martial 305(h)(2)(B)(iii)(b), as that issue is not presented in this case.