# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38519 (reh)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jaime R. RODRIGUEZ**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 January 2019

———————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 29 March 2017 by GCM convened at Joint Base San Antonio–Lackland, Texas.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Colonel Julie L. Pitvorec, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Tyler B. Musselman, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, JOHNSON, and LEWIS, *Appellate Military Judges*.

Chief Judge MAYBERRY delivered the opinion of the court, in which Senior Judge JOHNSON joined. Senior Judge Johnson filed a separate concurring opinion. Judge LEWIS filed a separate opinion concurring in part and dissenting in part.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

MAYBERRY, Chief Judge:

This case is before us for the third time. In June 2013, Appellant pleaded guilty to 15 specifications of violating a lawful general regulation by wrongfully attempting to develop and maintain personal and intimate relationships with various Air Force applicants, recruits, and recruiter assistants; one specification of violating a lawful general regulation by using his grade or position, threats, pressure, or promise of return of favors or favorable treatment in an attempt to gain sexual favors from an applicant;[1] one specification of violating a lawful order (no-contact order); one specification of making a false official statement; one specification of consensual sodomy; two specifications of obstructing justice by wrongfully endeavoring to impede an investigation; and two specifications of adultery in violation of Articles 92, 107, 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 925, 934.[2] Additionally, the court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of aggravated sexual assault by causing bodily harm;[3] one specification of abusive sexual contact by causing bodily harm;[4] one specification of consensual sodomy;[5] one specification of aggravated sexual contact by using strength; one specification of wrongful sexual contact; and one specification of indecent exposure in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920,[6] 925.[7] The court-martial sentenced Appellant to a dishonorable discharge, confinement for 27 years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority (CA) disapproved the adjudged forfeitures, but otherwise approved the sentence as adjudged.

---

[1] The lawful general regulation was Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships* (2 Mar. 2007).

[2] The military judge found Appellant guilty of 17 specifications of violating Article 92, but, prior to informing the members of the charges to which Appellant had pleaded guilty, the military judge merged Specifications 14 and 15 into a single specification renumbered Specification 14. There was ultimately a total of 16 specifications of violating Article 92, UCMJ, for sentencing purposes.

[3] The members acquitted Appellant of the charged greater offense of rape by using strength and power.

[4] The members acquitted Appellant of the charged greater offense of aggravated sexual contact by using strength, power, and restraint.

[5] The members acquitted Appellant of the charged greater offense of forcible sodomy.

[6] The specifications all use the version of Article 120, UCMJ, applicable to offenses between 1 October 2007 and 27 June 2012. *See Manual for Courts-Martial, United States* (2012 ed.), App. 28, at A28–1.

[7] The members acquitted Appellant of one specification of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.

Appellant initially raised 15 assignments of error (AOEs) covering several rulings by the military judge, the sufficiency of the evidence concerning his conviction of certain offenses, the providence of his guilty plea to violating a lawful general regulation, the performance of his trial defense counsel, the post-trial processing of his case, the actions of one member of the court-martial, and errors in the staff judge advocate's recommendation (SJAR).

In our original opinion, *United States v. Rodriguez (Rodriguez I)*, ACM 38519, 2015 CCA LEXIS 143 (A.F. Ct. Crim. App. 14 Apr. 2015) (unpub. op.), we addressed only the issues concerning the SJAR errors and ordered new post-trial processing. The record was remanded to the CA and new post-trial processing occurred. The CA again did not approve the adjudged forfeitures but otherwise approved the sentence as adjudged.

When the case was returned to this court for further review, Appellant raised two additional AOEs alleging that the CA did not review Appellant's submissions before taking action and excessive delay in post-trial processing warranted relief. In *United States v. Rodriguez (Rodriguez II)*, ACM 38519 (f rev), 2016 CCA LEXIS 416 (A.F. Ct. Crim. App. 13 Jul. 2016) (unpub. op.), we set aside and dismissed the findings for five of the six litigated offenses,[8] affirmed the remaining findings, and returned the record to The Judge Advocate General (TJAG) for remand to the CA, authorizing a sentence rehearing on the affirmed charges and specifications.[9]

The CA ordered a rehearing, which was held on 15 December 2016 and 27–29 March 2017. The court-martial composed of officer members sentenced Appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to E-1. The CA approved the sentence as adjudged.

---

[8] The findings included aggravated sexual contact by using force charged as Specification 2 of Second Additional Charge I on the basis that it was the same act charged in Specification 1 of the Second Additional Charge, and therefore dismissal was appropriate where they were both charged for exigencies of proof; indecent exposure charged as Specification 3 of Second Additional Charge I on the basis of unreasonable multiplication of charges; Charge III and its Specifications of aggravated sexual assault by causing bodily harm and abusive sexual contact by causing bodily harm on the basis of factual insufficiency; and nonforcible sodomy charged in Specification 1 of Charge IV on the basis of both legal and factual insufficiency. Chief Judge Allred dissented as to the factual sufficiency of Charge III and its Specifications but otherwise concurred with the majority.

[9] We deferred the issue of whether post-trial processing delays warranted relief until after the sentencing rehearing. We address that in this opinion.

Appellant now asserts ten AOEs: (1) Whether Appellant's pleas of guilty to violating a lawful general order were improvident; (2) Whether Appellant's pleas of guilty to adultery were improvident; (3) Whether Appellant is entitled to confinement credit because his continued confinement hearing was held 28 days after the record was returned to the CA; (4) Whether Appellant was improperly held in continued confinement; (5) Whether the military judge abused his discretion when he declined to take judicial notice of sex offender registration requirements; (6) Whether the military judge erred in admitting evidence of Appellant's sexual conduct with a recruiter assistant (arising from a charge for which his conviction was set aside by the appellate court) as evidence in aggravation of his conviction for violation of a lawful general order; (7) Whether the military judge erred by separating two specifications that had been merged for sentencing at the original trial, thereby increasing the maximum punishment; (8) Whether the military judge erred by erroneously instructing the members as to the maximum sentence;[10] (9) Whether the military judge erred by not providing an instruction as to the impact of a missing performance report; and (10) Whether Appellant is entitled to new post-trial processing as a result of errors in the current SJAR and CA action. We will also consider the previously deferred issue of whether the excessive post-trial delays warrant relief. We find that an affirmed combined specification was improperly separated into two distinct specifications, leading to an incorrect calculation as to the maximum punishment, and as a result, the military judge erroneously instructed the members as to that maximum punishment; however, we find no prejudicial error and affirm. We also find the military judge abused his discretion in not granting confinement credit and grant relief. We direct a corrected court-martial order (CMO) to reflect the consolidated Specification 14 of Charge I (incorporating the original Specifications 14 and 15) that we affirmed in *Rodriguez II*, and to account for the additional confinement credit ordered by this opinion.

## I. BACKGROUND

Appellant was an Air Force Recruiter who was found guilty of various types of improper conduct, including sexual conduct, involving Air Force applicants, recruits, and recruiter assistants (RAPpers). When this conduct came to light and was being investigated, Appellant lied about his activities and took actions to impede the investigation. Further facts are discussed as necessary to address the AOEs.

---

[10] We resolve the AOEs dealing with the maximum punishment as a single issue.

## II. DISCUSSION

### A. Providence of Guilty Pleas

#### 1. Additional Background

Appellant pleaded guilty to 16 specifications of violating Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships* (2 Mar. 2007), involving 15 different females. This instruction prohibited recruiters from establishing, developing or attempting to develop, or conducting a personal, intimate, or sexual relationship with a recruit, applicant, or RAPper and using their grade or position, threats, pressure, or promise of return of favors or favorable treatment in an attempt to gain sexual favors from a recruit, applicant, or RAPper. AETCI 36-2909 ¶¶ 4.5.3, 4.5.5.

Additionally, Appellant pleaded guilty to two specifications of adultery for having sex with two women who were not his wife, which under the circumstances was prejudicial to good order and discipline, and/or of a nature to bring discredit upon the armed forces. [11]

Previously on appeal, Appellant challenged his guilty pleas as to the violation of AETCI 36-2909 on the basis that the instruction was not punitive. We affirmed all of the offenses to which Appellant pleaded guilty. *Rodriguez II*, unpub. op. at *35–36, *45.

Appellant now challenges the providence of his pleas to violating AETCI 36-2909 and adultery on the basis that the military judge did not address *mens rea* during Appellant's plea. Appellant asserts that this failure creates a substantial basis in law and fact to question his pleas. We disagree.

#### 2. Law

We review a military judge's acceptance of a guilty plea for abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996) (citations omitted). The proper *mens rea* for a charge is a question of law, which we review de novo. *United States v Gifford*, 75 M.J. 140, 142 (C.A.A.F. 2016) (citation omitted). The military judge is required to "accurately inform Appellant of the nature of his offense and elicit from him a factual basis to support the plea." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004) (citation omitted). Additionally, an "essential aspect of informing Appellant of the nature of the offense is a correct definition of legal concepts." *Id.*

---

[11] Neither of the women was named in any other charge. The specification involving AR was charged as both prejudicial to good order and discipline and service discrediting while the specification involving MR was only charged as prejudicial to good order and discipline.

"Although there are exceptions, the 'general rule' is that a guilty mind is a 'necessary element in the indictment and proof of every crime.'" *United States v. Haverty*, 76 M.J. 199, 203 (C.A.A.F. 2017) (quoting *Elonis v. United States,* 135 S. Ct. 2001, 2009 (2015)). Silence in a statute or order does not prevent *mens rea* from being inferred. *Gifford*, 75 M.J. at 142. "[T]he Supreme Court has repeatedly inferred a *mens rea* requirement in instances where it was necessary to separate wrongful conduct from otherwise innocent conduct." *Id.* at 143 (citing *Elonis*, 135 S. Ct. at 2010) (internal quotation marks omitted). The levels of *mens rea* are general intent, negligence, reckless, knowing, or intentional. *Haverty*, 76 M.J. at 204 (citation omitted).

"The wrongfulness of [an] act obviously *relates to mens rea* . . . and lack of a defense, such as excuse or justification." *United States v. Rapert*, 75 M.J. 164, 175 (C.A.A.F. 2016) (quoting *United States v. King*, 34 M.J. 95, 97 (C.M.A. 1992)). One element of adultery requires wrongful sexual intercourse; a separate element requires that at least one of the parties be married. *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), pt. IV, ¶ 62.b. Thus, an allegation of the wrongfulness of the intercourse is independent, not redundant, of marital status. "The wrongfulness of the act obviously relates to *mens rea* (not elsewhere specified amongst the elements) . . . ." *King*, 34 M.J. at 97.

"An attempt requires 'specific intent to commit [the] offense,' Article 80(a), UCMJ, 10 U.S.C. § 880(a) (2012)." *United States v. Gutierrez*, 74 M.J. 61, 67 (C.A.A.F. 2015).

The elements of Article 92, UCMJ, violation of a lawful regulation, are (1) that there was in effect a certain lawful general regulation; (2) the accused had a duty to obey it; and (3) the accused violated or failed to obey the regulation. 2012 *MCM*, pt. IV, ¶ 16b.(1).

The elements of Article 134, UCMJ, adultery, are (1) that the accused wrongfully had sexual intercourse with a certain person; (2) that at the time, the accused or the other person was married to someone else; and (3) that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces and/or was of a nature to bring discredit upon the armed forces. 2012 *MCM*, pt. IV, ¶ 62b.

### 3. Analysis

#### a. AETCI 36-2909 offenses

With regard to the 15 specifications of violating AETCI 36-2909 by wrongfully attempting to develop and maintain personal and intimate relationships with Air Force applicants, recruits, and RAPpers, Appellant's plea inquiry left no doubt that his conduct with each of these young women was specifically done for the purpose of establishing or maintaining a personal and intimate relationship. Appellant clearly stated that he was aware the AETCI prohibited

such conduct but he repeatedly engaged in said conduct. Appellant's responses to the military judge establish that he was aware his conduct was wrongful, not innocent, and done with the specific intent to establish a prohibited relationship. The pleas were provident.

Appellant's plea inquiry responses addressing the single specification of violating AETCI 36-2909 by using his grade or position, threats, pressure, or promise of return of favors or favorable treatment in an attempt to gain sexual favors were similarly sufficient to establish the requisite *mens rea*. The plea was provident.

### b. *Adultery offenses*

Appellant's adultery involved two different women, one (AR) he met when she was an applicant but she was later determined to be medically disqualified and the other (MR) he met at the gym. AR's sister was aware of their conduct and knew that Appellant was a married Air Force recruiter. Appellant told another recruit who later enlisted in the Air Force about his relationship with MR.

On appeal, Appellant now asserts that, because the military judge did not address the *mens rea* of the adultery offenses as it related to the terminal element of conduct that was service-discrediting and prejudicial to good order and discipline, his pleas were not provident. Appellant's position erroneously applies the *mens rea* requirement to the third element of the offense. As a married man, having sexual intercourse with women not his wife makes that conduct wrongful and therefore establishes the *mens rea* of the first two elements of the offense. If that sexual intercourse is also service-discrediting and/or prejudicial to good order and discipline, it is criminal under Article 134, UCMJ.

Appellant's plea inquiry established that his sexual intercourse with AR and MR was both wrongful and prejudicial to good order and discipline, service-discrediting, or both. The pleas were provident.

## B. Confinement Credit

### 1. Additional Background

The following timeline is essential to resolving the issue of confinement credit:

| | |
|---|---|
| 13 July 2016 | *Rodriguez II* issued, setting aside and dismissing Specifications 2 and 3 of Second Additional Charge I, Charge III and its Specifications, Specification 1 of Charge IV, and the sentence. |
| 12 August 2016 | The Government requested this court reconsider its decision. |

7

| | |
|---|---|
| 16 September 2016 | Reconsideration request denied by this court. |
| 20 September 2016 | TJAG returns the case to the CA "who may order a rehearing on the sentence." |
| 4 October 2016 | The CA refers the case for a rehearing on the sentence. |
| 6 October 2016 | The CA orders a "continued confinement" hearing under R.C.M. 305. |
| 12 October 2016 | Appellant was provided detailed trial defense counsel. |
| 18 October 2016 | Confinement hearing held. Appellant ordered to remain confined. |
| 1 November 2016 | Trial defense counsel requests Appellant be transferred from the United States Disciplinary Barracks (USDB), Fort Leavenworth, Kansas, to San Antonio, Texas. |
| 11 November 2016 | Docketing conference. Motions hearing scheduled for 14 December 2016 and sentence rehearing docketed for 27 March 2017. |
| 7 December 2016 | Trial defense counsel filed Motion for Appropriate Relief seeking Appellant's release from pretrial confinement and confinement credit under Article 13, UCMJ, and R.C.M. 305. |
| 13 December 2016 | Appellant transferred from the USDB to Medina confinement facility near Joint Base San Antonio-Lackland Air Force Base, Texas. |
| 14 December 2016 | The Government files response to Motion for Appropriate Relief. |
| 15 December 2016 | Motions hearing. Military judge determines Appellant's continued confinement is appropriate and denies additional confinement credit. |

At trial, Appellant filed a motion for additional pretrial confinement credit for the time he spent in confinement after this court's decision on 13 July 2016 and asserted violations of R.C.M. 305. Additionally, Appellant alleged illegal pretrial confinement as a violation of Article 13, UCMJ, because he was housed with post-trial prisoners and the conditions of confinement at the USDB were more rigorous than necessary to ensure his presence at trial, relying on *United States v. Kruetzer*, 70 M.J. 444 (C.A.A.F. 2012), *United States v. Combs*, 47 M.J. 330 (C.A.A.F. 1997), and *Miller*, 47 M.J. 352.

The Government opposed the motion. First, the Government asserted that the 48-hour and seven-day review requirements of R.C.M. 305(i)(1) and (2) did not apply to continued confinement hearings, citing *Kruetzer* and *Combs*. Additionally the Government argued that, even if R.C.M. 305(i)(1) and (2) were violated, "it doesn't matter" if confinement was appropriate; therefore, Appellant was not entitled to additional confinement credit under R.C.M. 305. Finally, the Government argued that, because Appellant was not in pretrial confinement, Article 13, UCMJ, did not apply, again citing *Kruetzer*.

The military judge denied the motion for additional confinement credit, relying on the holding in *Kruetzer* that R.C.M. 305 and Article 13, UCMJ, were not available remedies to Appellant because he was not in pretrial confinement. The military judge further held the determination that confinement was appropriate was supported by the facts and that the conditions of confinement were not unduly rigorous or excessive and therefore did not amount to pretrial punishment.

On appeal, Appellant asserts the military judge erred in denying additional confinement credit as a result of the untimely confinement hearing. Citing *Kruetzer* and *United States v. Katso (Katso III)*, 76 M.J. 704 (A.F. Ct. Crim. App. 2017), *rev'd in part*, *United States v. Katso (Katso IV)*, 77 M.J. 247 (C.A.A.F. 2018),[12] Appellant requests 21 days of additional confinement credit. The Government asserts Appellant is not entitled to relief for two reasons: first his claim is moot because he was resentenced to confinement for six years; and second *Kruetzer* is controlling and Appellant was not entitled to a continued confinement hearing, he never requested one, and he has shown no prejudice.

**2. Law**

This court reviews a military judge's denial of relief for pretrial confinement in violation of Rule for Courts-Martial (R.C.M.) 305 for an abuse of discretion. *United States v. Adcock*, 65 M.J. 18, 24 (C.A.A.F. 2007) (citation omitted).

"No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against

---

[12] Subsequent to Appellant's pleading in this case, the CAAF affirmed in part and reversed in part *Katso III*. *See Katso IV*, 77 M.J. 247. In *United States v. Katso (Katso I)*, 73 M.J. 630 (A.F. Ct. Crim. App. 2014), this court set aside the findings and sentence. In *United States v. Katso (Katso II)*, 74 M.J. 273 (C.A.A.F. 2015), the CAAF reversed our decision in *Katso I* and remanded the case to this court for further proceedings under Article 66, UCMJ. As will be discussed *infra*, *Katso III* and *Katso IV* address the applicability of Article 13 and R.C.M. 305 to confinement review hearings when a case is pending appellate review at the CAAF and thus are distinguishable from the facts of this case.

him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence . . . ." Article 13, UCMJ, 10 U.S.C. § 813.

An individual may be ordered into pretrial confinement when "(1) An offense triable by court-martial has been committed; (2) The person confined committed it; and (3) Confinement is required by the circumstances." R.C.M. 305(d).

In R.C.M. 305(f), (h), (i), and (j), the President established a set of procedural rules for the imposition and review of pretrial confinement. *See* 2016 *MCM*, App. 21, at A21–17 to A21–21. To ensure the procedural rules are followed, the President ordered that an accused be granted day-for-day credit for noncompliance. R.C.M. 305(k).

Pretrial confinement is "necessary because it is foreseeable that: (a) [t]he prisoner will not appear at trial, pretrial hearing, preliminary hearing, or investigation, or (b) [t]he prisoner will engage in serious criminal misconduct;" and "[l]ess severe forms of restraint are inadequate." R.C.M. 305(h)(2)(B)(iii), (iv).

TJAG "shall, unless there is to be further action by the President, the Secretary concerned, the Court of Appeals for the Armed Forces [CAAF], or the Supreme Court, instruct the [CA] to take action in accordance with the decision of the Court of Criminal Appeals." Article 66(e), UCMJ, 10 U.S.C. § 866(e). If TJAG immediately decides not to pursue a case any further, there must be immediate notice to the CA of the opinion of the Court of Criminal Appeals (CCA) and "immediate direction to release an accused or conduct a hearing under RCM 305 . . . on pretrial confinement." *United States v. Miller*, 47 M.J. 352, 361 (C.A.A.F. 1997) (citation omitted).

**3. Analysis**

This issue is not new to this court and, as we have stated in previous opinions, the facts of each case must be considered in determining Appellant's status and the available confinement relief options available, if any.

When Appellant's case was returned to the CA on 20 September 2016, both our decision setting aside the findings as to Specifications 2 and 3 of Second Additional Charge I, Charge III and its Specifications, Specification 1 of Charge IV, and the sentence were no longer inchoate. Consequently, Appellant was no longer an adjudged prisoner and any decision to confine him was subject to R.C.M. 305. *See Miller*, 47 M.J. at 361; *United States v. Mancini,* No. ACM 38783 (reh), 2018 CCA LEXIS 495 *(*A.F. Ct. Crim. App. 16 Oct. 2018) (unpub. op.)*; cf. Katso IV,* 77 M.J. 247; *Kruetzer*, 70 M.J. 444; *Moore v. Akins*, 30 M.J. 249 (C.A.A.F 1990).

The *Katso IV* decision held that *Miller* was not controlling where appellate review is pending at the CAAF, pointing out that *Miller* was decided after Article 57a, UCMJ, 10 U.S.C. § 57a, was enacted but "failed to address Article 57a, UCMJ, let alone its statutory primacy on the question of deferral of sentence, including confinement" during an appeal pending at the CAAF pursuant to Article 67. *Katso IV*, 77 M.J. at 251. As was the case in *Mancini*, Article 57a, UCMJ, does not apply in Appellant's case because no certification to the CAAF occurred.

While the military judge found Appellant's case "much more like *Kruetzer*[13] than *Miller*," we disagree. First, *Kreutzer*, like *Katso IV* and unlike *Mancini* or this case, dealt with confinement during the pendency of an appeal to the CAAF pursuant to Article 67, UCMJ, 10 U.S.C. § 867. Second, as the dissent in *Kruetzer* correctly pointed out, it was "important to note what this case is not about. It is not about whether Kruetzer should have been released from confinement after the CCA set aside his convictions for the contested findings . . . and the sentence. Kruetzer . . . only requested that he be transferred from death row . . . ." *Kruetzer*, 70 M.J. at 449 n.3.

Moreover, the CAAF decision in *Kruetzer* is distinguishable in that it is primarily focused on Article 13, UCMJ, not R.C.M. 305. The *Kruetzer* majority held that Article 13, UCMJ, only applies to persons "held for trial," 70 M.J. at 447 (footnote omitted), and relied on *United States v. Inong*, 58 M.J. 460, 463 (C.A.A.F. 2003), to establish that "held for trial" ends after guilt is established at trial. Unlike Article 13, UCMJ, R.C.M. 305(a) clearly states that pretrial confinement is imposed "pending disposition of charges." The CAAF has addressed the application of R.C.M. 305 in cases where a court-martial has made findings but there is no adjudged sentence.

In *United States v. Tilghman*, 44 M.J. 493 (C.A.A.F. 1996), the CAAF upheld the trial judge's decision to grant ten-for-one illegal pretrial confinement credit pursuant to R.C.M. 305(k) for the time Tilghman was confined *between the announcement of findings and the announcement of sentence* after the Government ignored the trial judge's decision that pretrial confinement was not warranted. "The purpose of pretrial confinement is to ensure the person is present for trial; thus, we hold that pretrial confinement includes any period prior to completion of the trial." *Tilghman*, 44 M.J. at 495 (citing R.C.M. 304(g)). Additionally, in *United States v. Simoy*, 50 M.J. 1 (C.A.A.F. 1998), the CAAF affirmed this court's original decision as to the findings but reversed as to the sentence. On further review after the rehearing on sentence, this court addressed Simoy's allegation that the military judge erred by failing to grant relief for illegal pretrial confinement with regard to his confinement between the

---

[13] *United States v. Kreutzer*, 70 M.J. 444 (C.A.A.F. 2012).

CAAF's decision and the sentence rehearing. This court held there had been no "disposition" of the charged offenses, found Simoy's trial was not complete, and determined his continued restraint from the time of the CAAF's mandate until sentence announcement was pretrial confinement. *United States v. Simoy*, ACM 30496, 2000 CCA LEXIS 183, at *3–5 (A.F. Ct. Crim. App. 7 Jul. 2000) (unpub. op.), *aff'd, United States v. Simoy*, 54 M.J. 407 (C.A.A.F. 2001) (mem.).[14]

These distinctions are significant regarding the applicability of R.C.M. 305 and Article 13, UCMJ. The military judge's mistaken reliance on the holding in *Kruetzer*, thereby excluding any application of R.C.M. 305 in this case, and his subsequent denial of illegal pretrial confinement credit was an abuse of discretion. Furthermore, the military judge's supplemental ruling, which stated "as the accused remains lawfully confined awaiting a sentence rehearing the Government is not required to meet the requirements of RCM 305(i)(1) and (2)," is erroneous.

Article 66(e), UCMJ, requires the CA to take action in accordance with the decision of the CCA when no further review is pending. The Government acknowledges that Article 66(e), UCMJ, controls in this case but asserts that *Kruetzer* stands for the proposition that an appellant who remains convicted of an offense but is facing a rehearing is not a pretrial confinee and therefore is not entitled to the protections of R.C.M. 305 and Article 13, UCMJ. For the reasons stated above, the Government's interpretation of *Kruetzer* is erroneous. When further appellate review is pending, as in *Kruetzer*, Article 57(a), UCMJ, controls. In cases where no further appellate review is pending, Article 66(e), UCMJ, controls.

*Lawful* confinement at this stage would be pursuant to being held for trial and therefore subject to Article 13, UCMJ, and R.C.M. 305. The fact that Appellant remained convicted of some offenses did not independently justify his confinement pending a sentencing rehearing. While his affirmed convictions would provide evidence that he had committed offenses triable under the UCMJ, that evidence only satisfies two of the three requirements for pretrial confinement under R.C.M. 305(h)(2)(B). There must also be a finding that confinement is necessary because it is foreseeable that Appellant would not appear for trial or that Appellant would engage in serious criminal misconduct *and* that less severe forms of restraint are inadequate.

---

[14] *See also United States v. Saintude*, Army 9801647, 2003 CCA LEXIS 418 (A. Ct. Crim. App. 15 Oct. 2003) (unpub. op.), *aff'd*, 61 M.J. 175 (C.A.A.F. 2005) (affirming sentence after rehearing where "illegal presentence confinement" credit pursuant to Article 13 was awarded for confinement imposed pending the sentencing rehearing).

The 6 October 2016 Continued Confinement Hearing Order directs that the hearing be held in accordance with *Miller*, and the Appointment Letter refers to *Miller* and R.C.M. 305. The Government's brief on appeal repeatedly relies on the notion that Appellant was not entitled to a *continued* confinement hearing. We agree with regards to *continued* confinement hearing as defined by *Katso IV* because a continued confinement hearing requires that the case be pending further appellate review. However, Appellant was entitled to a pretrial confinement review hearing pursuant to R.C.M. 305(i)(2), required to be held within seven days of the imposition of confinement.

The Government argues that Appellant's claim for additional confinement credit is moot and that, if there was any error associated with the confinement hearings, Appellant was not prejudiced because the sentence adjudged at the rehearing exceeded the amount of time he had spent in confinement. Again, this analysis misses the point. There is no question that Appellant was entitled to credit for the entire time he spent in confinement.[15] The issue is whether he was entitled to additional credit for illegal pretrial confinement and, if so, for what period of time. The Analysis of R.C.M. 305(k) states:

> The requirement for administrative credit for violations of subsection . . . (i) . . . of this rule is based on *United States v. Larner*, 1 M.J. 371 (C.M.A. 1976). This credit is the sole remedy for violation of these provisions. *See United States v. Nelson*, 18 U.S.C.M.A. 177, 39 C.M.R. 177 (1969). Violations of other provisions would not render confinement illegal and hence would not trigger the sentence relief requirements. Such violations would be tested for specific prejudice, and, where such was found, would trigger a requirement to grant relief appropriate to cure the prejudice suffered.

2016 *MCM*, App. 21, at A21–20.

TJAG returned the case to the CA on 20 September 2016. Sixteen days later, the CA ordered the confinement hearing, which was held on 18 October 2016. Pretrial confinement started on 20 September 2016. There was no 48-hour probable cause determination or 72-hour review pursuant to R.C.M. 305(h)(2)(A) and (i)(1). While there was a review of continued pretrial confinement, it was not done until 18 October 2016, 28 days after the determination to keep Appellant confined—not in compliance with the seven-day review mandated by R.C.M. 305(i)(2).

Despite acknowledging the unambiguous language of Article 66(e), UCMJ, the Government on appeal adopts the military judge's erroneous view that

---

[15] *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

R.C.M. 305(i) is not applicable if Appellant is lawfully confined awaiting a sentence rehearing, cites *Kruetzer,* and argues that, as a result of the lawfulness of confinement, the Government is not required to meet the requirements of R.C.M. 305(i).[16] This is based on the erroneous interpretation that *Kruetzer* applies to cases not pending further appellate review and that in such cases the member "remains subject to lawful confinement as a prisoner found guilty of a number of offenses" as confinement is a result of a punishment ordered executed. However, one cannot be an "adjudged prisoner" without a lawful and executable sentence. Contrary to the dissent's position that the sentence was not extinguished when no further appellate review was pursued, Appellant had no executable sentence after we set it aside and TJAG chose not to pursue further appellate review in this case. As such, Appellant was a pretrial confinee not subject to post-trial or illegal pretrial punishment. Article 13, UCMJ. Consequently, pursuant to R.C.M. 305(k), the appropriate remedy for noncompliance with subsections (h) and (i) is administrative day-for-day credit, with no prejudice analysis required.

We do not marginalize the logistical difficulties the Government may encounter in complying with R.C.M. 305 in such circumstances. However, we cannot strip away important protections the rules provide servicemembers such as Appellant who remain confined without a sentence pending disposition of the charges against them. The dissent suggests the Air Force should establish a policy on rehearings when an individual remains in confinement. While we do not disagree, we assert that the existing rules must be the basis for such a policy. Appellant is entitled to illegal pretrial confinement credit of 21 days, and should be included in the corrected CMO.

## C. Appropriateness of Confinement Pending Rehearing on Sentence

Appellant asserts that the military judge abused his discretion when he determined that the pretrial confinement review officer (PCRO) did not abuse his discretion when he determined that Appellant should be confined pending resentencing. The Government argues that (1) Appellant's subsequent sentence to confinement "moots" the issue as to the legality of his continued confinement; and (2) even if the issue is not moot, neither the PCRO nor the military judge abused his discretion by determining that confinement was necessary. We agree that the military judge did not abuse his discretion as to the PCRO's determination.

---

[16] We note that, after CAAF affirmed the CCA decision in *Kruetzer*, the appellant was ultimately ordered into pretrial confinement despite the fact that he still faced the possibility of life in prison at the rehearing. *Kruetzer*, 70 M.J. at 449.

### 1. Additional Facts

The PCRO's decision stated that he found by a preponderance of the evidence that continued confinement was required under the criteria set forth under R.C.M. 305(h)(2)(B) for the following reasons:

> a. Offenses triable by court-martial were committed [by Appellant].
>
> b. Confinement is necessary because it is foreseeable that [Appellant] will engage in serious criminal misconduct.
>
> . . . .
>
> 3. Taking into account his repeated sexual misconduct coupled with repeated endeavors to impede an investigation, it is foreseeable that [Appellant] will engage in serious misconduct if released.
>
> c. Given the nature of the crimes for which he was convicted, less severe forms of restraint are inadequate.

The military judge's ruling stated:

> [Appellant's] command generally followed the procedures and criteria outlined in RCM 305 (regarding pretrial confinement) to determine whether continued confinement was appropriate. The confinement reviewing official was neutral and detached, his decision is supported by the record and he did not abuse his discretion in determining that continued confinement was appropriate.
>
> During the continued confinement hearing, the reviewing officer, [COL L], properly considered the requirements to keep an individual in continued confinement. Specifically, he addressed the four factors from RCM 305(h)(2)(B). [COL L] determined that multiple offenses triable by court-martial had been committed and that [Appellant] had committed those offenses. He made this determination based on [Appellant's] confirmed convictions. Further, he determined that, based on [Appellant's] repeated serious misconduct it was likely he would continue to commit further misconduct if he is not maintained in continued confinement and determined that lesser forms of restraint were not adequate.

### 2. Law

A military judge's decision on the legality of confinement is reviewed for an abuse of discretion. *United States v. Wardle*, 58 M.J. 156 (C.A.A.F. 2003) (citing

*United States v. Gaither*, 45 M.J. 349, 351–52 (C.A.A.F. 1996)). "[A]n appellate court should limit its review to the facts before the deciding official." *Gaither*, 45 M.J. at 351. Reliance on clearly erroneous facts or an erroneous view of the law will amount to an abuse of discretion. *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F. 2005) (footnote omitted).

Pretrial confinement is warranted when it has been demonstrated by a preponderance of the evidence that an offense triable by court-martial has been committed, that it is foreseeable that the accused will not appear at trial or will engage in serious misconduct, and that lesser forms of restraint are inadequate. R.C.M. 305(h)(2)(B).

### 3. Analysis

The sole issues Appellant challenges are whether or not the PCRO erred by determining that lesser forms of restraint were not adequate, and whether the military judge abused his discretion when he upheld the decision to confine Appellant pending the resentencing hearing.

Appellant relies on the premise that his misconduct ceased long before he was tried and sentenced, without being placed in pretrial confinement. Appellant asserts that this evidence, not fully considered by the PCRO or the military judge, is sufficient justification that he did not need to be in confinement pending sentencing, and therefore the military judge abused his discretion by determining otherwise. This argument does not rise to the level of abuse of discretion—the facts are not erroneous, nor was there any error of law. It is not a question of whether we agree with the decision by the military judge that confinement was required; we are limited to assessing whether his decision was reached improperly. There was no abuse of discretion.

## D. Sex Offender Registration

On appeal, Appellant asserts the military judge abused his discretion when he declined to take judicial notice of the Texas sex offender registration requirements and asks this court to set aside the sentence. Appellant asserts the judge erred because he erroneously applied *United States v. Talkington*, 73 M.J. 212, 217 (C.A.A.F. 2014) (holding that sex offender registration operates independently of the sentence adjudged and remains a collateral consequence), and erroneously applied the law by "holding trial defense counsel to a burden of preponderance of the evidence" on their request for judicial notice. We disagree.

Appellant asserts there is no burden required under Mil. R. Evid. 202 and that Appellant's case can be distinguished from *Talkington* due to Appellant presenting "undisputed, detailed evidence showing where Appellant would register, the duration of the registration, and the laws governing the restrictions resulting from the registration." Appellant goes on to assert that the military

judge's failure to take judicial notice impeded trial defense counsel's argument. Specifically, that the punitive requirements of Texas' sex offender registration meant that fewer restrictions on Appellant's liberty were required to protect society and that the "collateral consequences of the conviction alone were sufficient to satisfy the goals of sentencing such that the years of confinement sought by the prosecution and ultimately adjudged were excessive."

**1. Additional Facts**

At the rehearing, trial defense counsel filed a motion for judicial notice pertaining to sentencing matters, including a request for judicial notice of Texas state law regarding sex offender registration. Defense counsel argued that Texas law was "a fact of consequence for the members" to consider during their sentencing deliberations, specifically as to confinement. Attached to the motion was a memorandum asserting that, if Appellant was to reside in Texas, he would have a 15-year duty to register as a sex offender. The Government opposed the motion on the basis that sex offender registration was a collateral consequence.

The military judge denied the motion, relying on *Talkington*, and further held that an instruction on sex offender registration would confuse the members in determining an appropriate sentence. Appellant later asked the military judge to reconsider his ruling, citing *Doe v. Snyder,* 834 F.3d 696, 705 (6th Cir. 2016), for the proposition that the United States Court of Appeals for the Sixth Circuit had ruled that Michigan's sex offender registration requirement constituted punishment. The Defense also requested that the military judge give an instruction consistent with the one Chief Judge Baker proposed in his *Talkington* concurring opinion.

The military judge again denied the motion to take judicial notice but agreed to give "the standard *Talkington* and collateral consequences instruction" regarding sex offender registration if raised by the evidence. Appellant's verbal and written unsworn statements included the fact that he was a convicted sex offender. His written unsworn statement also included that he would be required to register as a sex offender in the state of Texas for 15 years after he was released from confinement. The military judge ultimately instructed the members regarding sex offender registration, which included the following language:

> The accused's unsworn statement included the accused's personal thoughts and statements about sex offender registration requirements. . . . An unsworn statement is a proper means to bring information to your attention, and you must give it appropriate consideration. Your deliberations should focus on an appropriate sentence for the accused for the offenses of which the

accused stands convicted. . . . [W]hen convicted of certain of-
fenses . . . the accused must register as a sex offender with the
appropriate authorities in the jurisdiction in which he resides,
works, or goes to school. Such registration is required in all 50
states; though requirements may differ between jurisdictions.
Thus, specific requirements are not predictable.

It is not your duty to attempt to predict sex offender registration
requirements, or the consequences thereof. . . .

While the accused is permitted to address these matters in an
unsworn statement, these possible collateral consequences
should not be part of your deliberations in arriving at a sentence.
Your duty is to adjudge an appropriate sentence for this accused
based upon the offenses for which he has been found guilty, that
you regard as fair and just when it is imposed, and not one whose
fairness depends upon . . . possible requirements of sex offender
registration, and the consequences thereof, at certain locations
in the future.

**2. Law**

This court reviews a military judge's decision to take judicial notice for an
abuse of discretion. *United States v. Lutes*, 72 M.J. 530, 533 (A.F. Ct. Crim.
App. 2013) (citations omitted).

Mil. R. Evid. 201 authorizes judicial notice of "adjudicative facts" defined
as "simply the facts of the particular case." *See* 2016 *MCM*, App. 22, at A22–4
(hereinafter "Drafters' Analysis"). Mil. R. Evid. 201(b) limits an adjudicative
fact that may be judicially noticed to one "not subject to reasonable dispute
because it: (1) is generally known universally, locally, or in the area pertinent
to the event, or (2) can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned."

Mil. R. Evid. 202(a) allows a military judge to take judicial notice of domes-
tic law "if it is a fact that is of consequence to the determination of the action."

Mil. R. Evid. 401 states that "[e]vidence is relevant if: (a) it has any ten-
dency to make a fact more or less probable than it would be without the evi-
dence; and (b) the fact is of consequence in determining the action."

R.C.M. 1001(c)(1) allows the Defense to submit matters in extenuation and
mitigation during sentencing. The collateral consequences of a court-martial
do not constitute R.C.M. 1001 material and they should not be considered for
sentencing. *United States v. McNutt*, 62 M.J. 16, 19–20 (C.A.A.F. 2005). "The
general rule concerning collateral consequences of a sentence is that "courts-
martial [are] to concern themselves with the appropriateness of a particular

sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.'" *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988) (alteration in original) (quoting *United States v. Quesinberry*, 31 C.M.R. 195, 198 (C.M.A. 1962)).

### 3. Analysis

Appellant's understanding of Mil. R. Evid. 202 ignores the basic premise that, for judicial notice of a domestic law to be appropriate, the law must be a fact that is of consequence to the determination of the action. Simply stated, it must be relevant. The burden of proof on any factual issue for which resolution is necessary to decide a motion shall be by a preponderance of the evidence, and the burden is on the moving party. *See* R.C.M. 905(c)(1), (2). The burden was Appellant's to bear, and the military judge did not abuse his discretion in so holding.

Furthermore, the military judge appropriately applied the holding in *Talkington*, and, despite the fact that the United States Court of Appeals for the Sixth Circuit had ruled a state sex offender registration law to be punishment, the law in *Doe v. Snyder* was not the Texas law at issue in this case. The CAAF in *Talkington* very clearly stated that an accused is permitted to mention sex offender registration in his unsworn statement, and the military judge is authorized to place sex offender registration in its proper context by informing the members that it is permissible for an accused to address sex offender registration in an unsworn statement, while also informing them that possible collateral consequences should not be part of their deliberations. 73 M.J. at 218. The military judge did not abuse his discretion in denying the motion to take judicial notice of the Texas sex offender registration requirement.

## E. Aggravation Evidence

Appellant asserts that the military judge erred in admitting as evidence in aggravation the portions of Airman First Class (A1C) BS's trial testimony that referred to Appellant penetrating her vagina with his finger and placing her hand on his penis. Appellant acknowledges that A1C BS was a victim of Appellant's offenses of attempting to establish or maintain a personal or intimate relationship while she was a RAPper but asserts that, because Appellant's convictions for the Article 120 offenses involving A1C BS were set aside and dismissed on appeal, the evidence was improper evidence in aggravation. Appellant again requests that we set aside the sentence. We decline to do so.

### 1. Additional Facts

At trial, Appellant pleaded guilty to the offense of attempting to establish or maintain a personal or intimate relationship with A1C BS and admitted that he engaged in "consensual sexual touching" with A1C BS. Specifically, Appellant pleaded not guilty to rape (digital penetration of A1C BS's vagina by

using strength and power that she could not avoid or escape the sexual act) but was found guilty of the lesser-included offense of aggravated sexual assault by causing bodily harm. Additionally, Appellant pleaded not guilty to aggravated sexual assault (causing A1C BS to touch his penis with her hand, using strength, power, and restraint by grabbing her hand and rubbing it on his penis) but was found guilty of the lesser-included offense of abusive sexual contact by causing bodily harm. Finally, Appellant pleaded not guilty to forcible sodomy of A1C BS (oral sodomy by force and without consent) but was found guilty of the lesser-included offense of nonforcible sodomy.

In *Rodriguez II*, we found the nonforcible sodomy conviction to be both legally and factually insufficient because A1C BS stated only that Appellant performed oral sex on her, never explicitly indicating the required penetration occurred. We found the aggravated sexual assault and abusive sexual contact offenses (digital penetration and Appellant placing her hand on his penis) to be factually insufficient. Specifically, we found the Government failed to prove beyond a reasonable doubt that Appellant did not raise a defense of mistake of fact as to consent. Thus, while the convictions were set aside, there was no determination by this court that the events did not happen; they were merely not proven beyond a reasonable doubt to be criminal offenses.

Six days prior to the scheduled Article 39(a), UCMJ, hearing, the Government filed a motion to pre-admit a number of exhibits, to include the audio testimony of 17 witnesses from the original trial. The Government proposed redacting certain sections of A1C BS's trial testimony that directly related to the offenses that were dismissed on appeal but "leaving the portions of the testimony which are relevant to the Article 92 offenses." At the Article 39(a) hearing on 15 December 2016, the Defense indicated they had not yet had the opportunity to file a response to the motion but planned to do so. On 20 December 2016, the Defense filed its written response, objecting only to specific portions of the audio of A1C BS's testimony[17] regarding offenses that were dismissed on appeal and expressly stating, "The Defense has no objections to those pages that are already redacted." On 30 December 2016, the Government filed a written response to the Defense objections, asserting that the portions of testimony to which Appellant was objecting amounted to facts and circumstances related to the offenses of which Appellant was convicted, but continued to redact certain portions of each audio recording. On 15 March 2017, ten days before the scheduled rehearing, the Defense filed a supplemental objection asserting the proffered audio evidence was offered in the presentencing phase of

---

[17] Appellant objected to portions of another witness's testimony as well but does not raise that objection on appeal.

the original trial and did not qualify as "testimony on the merits" under R.C.M. 810(a)(2)(A), which objection was withdrawn seven days later.

On 26 March 2017, the day before the resentencing hearing was scheduled to start, the military judge issued a written ruling on the motion to pre-admit the audio excerpts from the original trial. Specifically, the military judge ruled with regard to the disputed portions of the testimony of A1C BS as follows:

> This testimony is relevant to the Article 92 violation as it describes sexual activity the accused engaged in with A1C [BS] and is relevant in demonstrating how the accused violated paragraph 4.5.3 of the AETCI. Furthermore, this evidence is appropriate aggravation evidence as it relates to adverse impact on the mission and discipline. Furthermore, in conducting a [Mil. R. Evid.] 403 balancing test, this testimony does not unfairly prejudice the accused. Of note, the testimony explicitly states "I allowed him to do that."

> Similarly, for the reasons stated in the paragraph above, this testimony is admissible in proving the violation of paragraph 4.5.3 of the AETCI. A1C [BS] is discussing sexual activity which occurred between her and the accused during the recruiter's assistance program at the workplace. Again, this evidence is appropriate aggravation evidence as it relates to adverse impact on the mission and discipline. Furthermore, in conducting a [Mil. R. Evid] 403 balancing test, this testimony does not unfairly prejudice the accused.

The military judge overruled the objection and indicated that he would consider limiting instructions submitted by the parties. No limiting instructions were requested or given.

The next day, on the first scheduled day of the resentencing hearing, the Government indicated it was also requesting to pre-admit the written transcripts of the testimony from the 17 witnesses, relying on *United States v. Craig*, 60 M.J. 156 (C.A.A.F. 2004). The Defense objected to the admission of the written transcripts. Ultimately the parties agreed to mark the written transcripts as Appellate Exhibits and allowed the members to have only one exhibit at a time to follow along as the audio was being played but not to take into the deliberation room with them. Additionally, the parties agreed to not

allow the members to take the audio evidence into the deliberation room. If a member wanted to re-hear any testimony, it would be re-played in open court.[18]

On appeal now, Appellant asserts not only that portions of the audio testimony of A1C BS were improperly admitted but also that additional testimony not previously objected to and relating to Appellant placing A1C BS's hand on his penis was also erroneously admitted and constituted plain error. Appellant asserts that this evidence did not constitute matters in aggravation, and, even if it did, it should have been excluded under Mil. R. Evid. 403.

**2. Law**

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Eslinger,* 70 M.J. 193, 197 (C.A.A.F. 2011) (citation omitted). Whether Appellant has waived an issue is a question of law that we review de novo. *United States v. Ahern,* 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted).

R.C.M. 1001(b)(4) allows the Government to admit evidence in aggravation "directly relating to or resulting from the offenses of which the accused has been found guilty." Furthermore, the Government may present evidence "directly related to the offense . . . so that the circumstances surrounding that offense or its repercussions may be understood by the sentencing authority." *United States v. Irwin*, 42 M.J. 479, 483 (C.A.A.F. 1995) (quoting *United States v. Vickers*, 13 M.J. 403, 406 (CMA 1982)).

Aggravation evidence is subject to Mil. R. Evid. 403, and, even if relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. When a military judge conducts a proper balancing test under Mil. R. Evid. 403 on the record, the ruling will not be overturned absent a clear abuse of discretion. *See United States v. Asby*, 68 M.J. 108, 120 (C.A.A.F. 2009) (citation omitted).

R.C.M. 810(a)(2)(A) states,

> The contents of the record of the original trial consisting of evidence properly admitted on the merits relating to each offense of which the accused stands convicted but not sentenced may be established by any party whether or not testimony so read is otherwise admissible under Mil. R. Evid. 804(b)(1).

---

[18] We note that the record of trial (ROT) for the sentence rehearing does not contain a transcript of the audio that was played in court. Rather, the ROT refers to the Appellate Exhibits, which consist of redacted transcripts from the original ROT.

Failure to object to the admission of sentencing evidence forfeits review of the issues absent plain error. *Eslinger*, 70 M.J. at 197–98 (citations omitted). Whereas forfeiture is a failure to assert a right in a timely fashion, waiver is "the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citation omitted). The test for whether the erroneous admission of evidence during sentencing amounted to prejudice is whether the error "substantially influenced the adjudged sentence." *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005) (citation omitted).

CCAs are empowered to consider claims even when those claims have been waived. *See* Article 66(c), 10 U.S.C. §866(c); *United States v. Chin,* 75 M.J. 220, 222 (C.A.A.F. 2016).

**3. Analysis**

With regard to the "new" matters Appellant did not object to at trial but now asserts were improperly admitted, we find that he waived this issue when his counsel affirmatively stated on the record that the Defense had no additional objections to the proposed redactions other than those already raised. Understanding that we have the authority under Article 66 and *Chin* to consider Appellant's waived claim, we find the underlying facts are such that we leave Appellant's waiver intact. *See Chin*, 75 M.J. at 223.

Assuming *arguendo* this testimony was improperly admitted, Appellant has not demonstrated prejudice. A1C BS's testimony involved evidence of Appellant kissing her, hugging her, touching her, and sending her sexually charged texts and emails. While the touching of his penis was more egregious than some of the other conduct, Appellant acknowledged he engaged in sexual conduct with A1C BS.

With regard to the portions of A1C BS's testimony that were admitted over Defense objection, we find the military judge did not abuse his discretion in determining that the testimony described the sexual activity Appellant engaged in with A1C BS and was therefore relevant to demonstrate the extent to which Appellant violated AETCI 36-2909. Appellant admitted that he engaged in sexual behavior with A1C BS in his guilty plea inquiry but did not describe that conduct. The Government was not limited to the evidence provided by Appellant and A1C BS's testimony was properly admitted. Additionally, we find the military judge conducted a proper Mil. R. Evid. 403 balancing test and determine there is no basis to overturn his decision. The admitted testimony included A1C BS's acknowledgement that she allowed Appellant to touch her vaginal area, so there was no implication that the touching was not consensual.

While Appellant asserts he may have been more harshly sentenced because of the details included in A1C BS's testimony, there is no evidence to support

that assertion. Appellant's convictions involved attempting to develop or maintain inappropriate relationships with a total of 15 Air Force applicants, recruits, and RAPpers; violating a no-contact order; false official statement; consensual sodomy; obstruction of justice; and adultery with two women. A1C BS was one of 17 witnesses whose testimony was provided to the members. A1C BS's testimony was *de minimis* with regards to the totality of information provided to the members. The details she provided as to the nature of the sexual conduct between herself and Appellant was accurate. We are confident this did not substantially influence the adjudged sentence.

## F. Maximum Punishment

Appellant asserts that the military judge incorrectly separated two specifications that had been merged at the original trial for sentencing (and affirmed on appeal), which then resulted in a miscalculation of the maximum punishment (74 years and six months) and corresponding erroneous instruction to the members as to the maximum punishment. Appellant requests that we reassess his sentence. We agree that the military judge erred in calculating the maximum punishment and instructing the members as to that maximum punishment but find no colorable showing of prejudice. The error in separating the previously affirmed consolidated specification, leading to the erroneous maximum punishment calculation, was done not by the military judge but by the Government with no involvement of the military judge or Defense.

### 1. Additional Facts

The decision of this court in *Rodriguez II* affirmed the findings of guilty as to 16 specifications in violation of Article 92, UCMJ, 15 of which authorized a two-year maximum confinement for each and one of which authorized six months confinement. We stated, "The military judge merged both specifications [14 and 15] into one specification (the now renumbered specification 14). We find no error in the military judge's ruling to consolidate the specifications. Appellant, thus, only faced sentencing and stands convicted of the consolidated specification 14 . . . . No further relief is warranted." *Rodriguez II*, unpub. op. at *13–14 (internal citation omitted).

The Government asserts that we review this issue as a decision by the military judge regarding the unreasonable multiplication of charges (UMC). Relying on the concurring opinion in *United States v. Ruppel*, 49 M.J. 247, 254 (C.A.A.F. 1998) (Effron, J., concurring in part and in the result), the Government further asserts that the original trial judge only found UMC for sentencing purposes and, because this court ordered a new sentencing hearing, this court "effectively vacated that ruling."

**2. Law**

"The maximum punishment authorized for an offense is a question of law, which we review de novo." *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011) (citations omitted).

"A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a).

A CCA "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Swift*, 76 M.J. 210, 216 (C.A.A.F. 2017).

**3. Analysis**

At the initial session in Appellant's rehearing, the military judge informed Appellant that he had not reviewed the record of the case, only "the charge and the convening order . . . the appellate decision and the motions that have been filed by counsel." The military judge made no ruling regarding alleged UMC because there was no motion for UMC raised at the sentencing rehearing.

In *Ruppel*, the CA ordered a fact-finding hearing on some of the offenses for which Ruppel had been convicted. Ultimately, that hearing resulted in the CA disapproving some, but not all, of the findings from the original trial and ordering a rehearing on those offenses as well as a sentencing hearing. *Ruppel*, 47 M.J. at 248–49. Upon appellate review, the CAAF held that the rehearing judge did not violate Ruppel's due process rights or the "law-of-the-case" doctrine in denying a motion for sentencing credit that the original trial judge had granted. *Id.* at 251. The CAAF analysis started by recognizing there was a split among the federal circuits as to whether the law-of-the-case doctrine applied only to final rulings. The majority in *Ruppel* applied the language in R.C.M. 905(f) providing that a military judge has the authority to reconsider and reverse a ruling any time prior to authentication of the record and held "law of the case only applies to final rulings and does not restrict a military judge's authority or discretion to reconsider and correct an earlier trial ruling." *Id.* at 253.

While the Government relies on the "law of the case" analysis in *Ruppel*, the specific language from the concurring opinion cited states that "an appellate decision remanding the case for further sentencing proceedings renders the earlier decision a nullity, thereby permitting reconsideration of the earlier ruling concerning sentence credit." *Id.* at 254–55. However, the cited language omits language appearing earlier in that concurring opinion: "if an appellate-level decision is not appealed by the party adversely affected by the decision,

that decision is binding for purposes of subsequent proceedings in that case." *Id.* at 254 (citation omitted).

The Government's position ignores the fact that our earlier opinion authorizing a resentencing hearing included the *affirmance* of the consolidated specification. The Government did not appeal the prior decision of this court. Even applying the analysis in the *Ruppel* concurring opinion, our affirmance as to the combined findings is binding for purposes of subsequent proceedings.

The decision to separate these specifications for sentencing purposes was neither made by this court's prior decision nor made by the military judge presiding at the sentencing rehearing. From the record before us, we conclude it was unilaterally made by the Government when it created the flyer for the rehearing. After the original trial, there were no longer separate specifications. All parties were privy to the complete record of trial (ROT) from the original trial, and the military judge indicated he had reviewed the original CMO. There could have been a more thorough discussion on the record, but there was not. The record is devoid of *any* legal authority the Government believed authorized separating the affirmed, consolidated specification for the purpose of the rehearing. Its efforts to justify that action now are based on an erroneous application of the law. We are equally disturbed by the fact that the Defense did not object to the flyer submitted on the record, which on its face appears to waive the error. However, we need not determine forfeiture or waiver. Our decision affirming the consolidated specification was binding on the sentence rehearing. Accordingly, we direct a correction of the error. *See United States v. Hardy*, 77 M.J. 438, 443 (C.A.A.F. 2018). Although we order a new CMO reinstating the previously affirmed consolidated specification, we are able to assess any impact on the sentence with the record before us.

The maximum punishment for the *affirmed* offenses was 72 years and six months. Consequently, the maximum punishment of 74 years and six months calculated by the military judge and subsequent instruction to the members were erroneous. We now analyze whether the combination of errors regarding the maximum punishment materially prejudiced a substantial right of Appellant. Given the two-year disparity between the maximum sentence calculated by the military judge and the actual maximum punishment authorized and the fact that the members sentenced Appellant to only six years of confinement—half of what the Government requested and only two years more than Defense counsel proffered—we are confident that the error did not substantially influence the sentence and materially prejudice Appellant's substantial rights.

## G. Failure to Instruct as to Missing Enlisted Performance Report

Appellant asserts that the failure by the military judge to instruct the members as to how they should treat a missing enlisted performance report

(EPR) constituted plain error. Appellant asserts that he suffered prejudice as a result because the members were left to "infer the worst in the rehearing due to the missing record and the absence of an instruction." Appellant further asserts the appropriate remedy is a new resentencing hearing. We disagree.

### 1. Additional Facts

Appellant's performance reports are found at Prosecution Exhibit 3. At both the original trial and the resentencing hearing, the EPR for the reporting period of 2009 to 2010 was missing. Some of the offenses resulting in findings of guilty occurred during the reporting period.

At the request of trial defense counsel in Appellant's original sentence hearing, the military judge addressed this omission with an instruction, reminding the members of the Government's "obligation to maintain these types of reports" and directing them to "infer that [Appellant]'s performance during that reporting period was truly among the best."

The instruction was not requested or given in Appellant's rehearing. Specifically, defense counsel affirmatively stated at the rehearing he had no objection to Prosecution Exhibit 3, which consisted of all Appellant's EPRs except for the missing one.

### 2. Law

In *United States v. Campos*, the CAAF held Appellant waived his right to challenge the admissibility of a stipulation of expected testimony when defense counsel, at trial, had affirmatively responded that he had no objection to the stipulation; had advance notice of the stipulation; had considered the impact of the stipulation on the appellant's case; and when the appellant, on appeal, had not alleged ineffective assistance of counsel. 67 M.J. 330, 332–33 (C.A.A.F. 2009).

Failure to request an evidentiary instruction results in review for plain error. *United States v. Guthrie*, 53 M.J. 103, 106 (C.A.A.F. 2000) (citation omitted). To prevail under plain error analysis, an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008) (citation and internal quotation marks omitted).

"If the accused objects to a particular document as inaccurate or incomplete in a specified respect, or as containing matter that is not admissible under the Military Rules of Evidence, the matter shall be determined by the military judge. Objections not asserted are waived." R.C.M. 1001(b)(2); *see Swift*, 76 M.J. 210.

### 3. Analysis

Appellant and his counsel had the original ROT that identified both the missing EPR and the fact that an instruction has been given. Nevertheless, there was no objection to the admission of Prosecution Exhibit 3. Furthermore, in the defense sentencing argument, defense counsel stated,

> [Appellant] is an airman who gave more than a decade of good time, not even accounting for the time that's reflected on the Charge Sheet, to the Air Force. But we're not going to focus on that. We're not going to go throw a bunch of citations and awards in front of you, because, in all honesty, the things he did, outweighed the good that he did in the Air Force. And we're not going to try to manipulate you in that way, but it's absolutely something that you should consider.

Like in *Campos*, Appellant made a known relinquishment of his right to challenge the content of Prosecution Exhibit 3 as incomplete. There was no objection or request for an instruction. The defense counsel's theory explicitly relied on not trying to attempt to overcome the gravity of the offenses for which Appellant was being sentenced. Appellant does not raise ineffective assistance of counsel before us on appeal. Appellant waived this issue.

Even if Appellant did not waive this issue, he has not demonstrated plain error. Appellant's reliance on *Ruppel* for the notion that the military judge has the authority to reconsider and correct an earlier trial ruling is inapt. At the rehearing, the Government was required to reoffer the exhibits. This mandated a new ruling by the military judge to admit the exhibits, at which time Appellant's counsel did not object. Appellant does not assert any other authority for mandating that the military judge *sua sponte* instruct on the missing EPR. Accordingly, he has not demonstrated that the military judge committed plain error by not *sua sponte* giving an instruction on the issue. Even assuming Appellant has shown plain error in this case, Appellant has not demonstrated prejudice. Appellant is not entitled to relief.

## H. SJAR and CA errors

### 1. Additional Facts

Appellant, conceding the plain error standard applies, argues that three post-trial errors entitle him to new post-trial processing. First, Appellant argues that he was prejudiced by the CA separating Specifications 14 and 15 of Charge I in the CMO. Second, he identifies that the CMO cites the wrong paragraphs of AETCI 36-2909 for Specifications 5 and 15 of Charge I. Lastly, Appellant asserts that the CMO improperly Specification 1 of Charge III where only a single specification exists.

Additionally, Appellant alleges the CA "approved a sentence that she lacked authority to approve," proffering that, because the original CA disapproved the adjudged forfeiture of pay, forfeitures could not be approved upon the conclusion of the rehearing. Appellant contends that such error was prejudicial and asks this court to order new post-trial processing and defer its decision on whether relief is warranted.

**2. Law**

Whether post-trial processing was completed correctly is a question reviewed de novo. *United States v. Leblanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004)). Failure to comment on alleged errors in an SJAR forfeits any claim for relief absent plain error. *Leblanc*, 74 M.J. at 660 (citing R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)).

Article 63, UCMJ, states that upon a sentencing rehearing "no sentence in excess of or more severe than the original sentence may be approved. . . ." 10 U.S.C. § 863. R.C.M. 810(d)(1) states that "offenses on which a rehearing . . . has been ordered shall not be the basis for an approved sentence in excess of or more severe than the sentence ultimately approved by the convening . . . authority. . . following the previous trial. . . . "

The discussion accompanying R.C.M. 1107(f)(5) clarifies:

> [A] convening authority is prohibited from approving a dishonorable discharge if a bad conduct discharge had formerly been approved. Otherwise, in approving a sentence not in excess of or more severe than one previously imposed, a convening authority is not limited to approving the same or lesser type of "other punishments" formerly approved.

*See United States v. Altier*, 71 M.J. 427 (C.A.A.F. 2012) (question is not whether any individual component of a sentence is more severe than that approved initially but whether the overall sentence is in excess of, or more severe than, the sentence approved after the original court-martial).

**3. Analysis**

We agree that Specifications 14 and 15 of Charge I should be consolidated as they were in the CMO that we affirmed in *Rodriguez II*. Making that correction will also resolve the mistaken paragraphs of AETCI 36-2909. Finally, a corrected CMO will eliminate the "1" after "Specification" in Charge III. None of these errors requires new post-trial processing.

Appellant's assertion that the CA could not approve the sentence adjudged at the rehearing because it included forfeiture of pay that had been disapproved in the original sentence is a misapplication of Article 63, UCMJ, and

R.C.M. 1107(f). Appellant did not object to the the SJAR and only requested clemency in the form of reduced confinement. Assuming *arguendo* the SJAR constituted error, Appellant has not demonstrated the error materially prejudiced a substantial right. Appellant has not identified any error that mandates new post-trial processing in this case.

We direct a corrected CMO to reflect the language contained in Specification 14 of Charge I of the original CMO; to appropriately title the Specification of Charge III; and to correct the language of Specification 5 of Charge I, which erroneously includes the words "or maintain" and "intimate."

## I. Post-Trial Processing Delay

### 1. Additional Facts

Appellant's court-martial concluded on 14 June 2013. On 19 December 2013, the CA took action on the case, 188 days after Appellant's trial ended. The record contains an explanation that it took 101 days to transcribe the record and another 15 days to serve the SJAR and ROT on Appellant. Appellant then requested a delay to submit his clemency matters, and a second delay to consider additional matters after he received the SJAR addendum. Ultimately, no additional matters were submitted and action was taken two days later. Additionally, the case was not initially docketed with this court until 28 January 2014, 39 days after the CA took action. The record contains no explanation for the delay in docketing Appellant's case. On 14 April 2015, this court issued *Rodriguez I*, addressing only the errors in the SJAR and remanding the case for new post-trial processing.

The CA signed the new action on 8 July 2015, the CMO is dated the same day, and the case was re-docketed with this court on 10 August 2015, 33 days after the new action. On 13 July 2016, this court issued *Rodriguez II*, affirming some offenses, setting aside some offenses, and authorizing a rehearing. We deferred ruling on the timeliness of post-trial processing.

The rehearing concluded on 29 March 2017. The CA took action on 17 July 2017, the CMO is dated the same day, and the case was again re-docketed with the court on 1 August 2017.

Appellant initially requested relief in the form of a reduction of four years from his sentence to confinement. After the July 2015 post-trial processing, Appellant requested relief in the form of a reduction of five years from his sentence to confinement. Now, because Appellant requests we further delay our final review, he did not modify his requested relief. Based on our denial of Appellant's request for new-post trial processing, we address the post-trial processing delay.

**2. Law**

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the CAAF established a presumption of a facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial[,]" when "the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action[,]" and when "appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals."

Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

In *Moreno*, the CAAF identified three types of cognizable prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–40 (citations omitted).

In *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002), the CAAF recognized this court has the *de novo* power and responsibility to disapprove any portion of a sentence that it determines, on the basis of the entire record, should not be approved, even absent any actual prejudice.

**3. Analysis**

In this case, there was a facially unreasonable 68-day delay from sentence to action as well as a facially unreasonable nine-day delay from action to docketing prior to the issuance of *Rodriguez I*. With regard to the delay in CA action, Defense delays accounted for 26 days, making 42 days attributable to the Government. Appellant's requested relief of a four-year reduction of his sentence to confinement relied only on *Tardif* and proffered no evidence of prejudice. After *Rodriguez I*, there was an additional facially unreasonable three-day delay from action to docketing. Appellant's revised request for a five-year reduction of his sentence to confinement relied only on *Tardif* and again proffered no evidence of prejudice. Finally, there is the issue of whether appellate review has exceeded the *Moreno* standard.

*a. Base-level delay*

The initial base-level delays attributable to the Government total 51 days. The delay compiling the ROT, consisting of over 1400 pages and 10 volumes as

well as the two delays, totaling 24 days, by Appellant during the clemency process are understandable. The facially unreasonable nine-day delay from initial action to docketing is not excessive, but "the least defensible of all and worthy of the least patience." *See United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). Appellant did not request timely review at the base level.

After *Rodriguez I*, there was another delay between the new action and docketing. While the delay only exceeded the *Moreno* standard by three days, we note that the new action and CMO are dated 8 July 2015, yet the legal office did not transmit the ROT for the case to be docketed for almost a month. The Government attributes this delay to the new staff judge advocate's "commendabl[e] desire[ ] to thoroughly review this case . . . since it [was] remanded to the base for post-trial processing errors," yet it created another presumptively unreasonable delay as a result. This delay appears to have been totally avoidable and weighs against the Government in light of it being a repeat violation. Appellant consequently modified his requested relief to a five-year reduction of his sentence to confinement, again relying only on *Tardif* and again proffering no evidence of prejudice.

Although Appellant prevailed on the substantive grounds of his appeal in *Rodriguez II*, he remained convicted. Similarly, because Appellant's substantive appeal resulted in a sentencing rehearing only, there is no evidence his ability to present a sentencing case at the rehearing was impaired. While his confinement was reduced from 27 years to six years, this newly adjudged confinement exceeded that which he had served. Therefore, there is no oppressive incarceration. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Moreno*, 63 M.J. at 140. There is no assertion by Appellant of any particularized anxiety or concern caused by the base-level delays.

Appellant asserts no prejudice, we find no prejudice, and we find no violation of Appellant's due process rights under *Moreno*. Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–25. We conclude that such an exercise of our authority is not appropriate in this case.

### b. *Appellate review delay*

We are mindful of the total length of time this case has taken to complete appellate review at the CCA level. Each of the opinions issued by this court were within the 18-month docket-to-opinion *Moreno* standard. We remanded

the case for new post-trial processing, addressed 14 AOEs, held an oral argument, addressed another ten AOEs, set aside findings, and authorized a sentencing rehearing. The total record in this case exceeds 2300 pages of transcript and comprises 19 total volumes. The relief we grant in this opinion is based solely on independent actions arising from the remand authorizing a resentencing proceeding.

### III. CONCLUSION

The previously-affirmed findings and newly-approved sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings previously affirmed in *United States v. Rodriguez (Rodriguez II)*, ACM 38519 (f rev), 2016 CCA LEXIS 416 (A.F. Ct. Crim. App. 13 Jul. 2016) (unpub. op.) and the sentence are **AFFIRMED**.[19]

JOHNSON, Senior Judge (concurring):

I concur. Specifically with regard to Section II.B., addressing confinement credit for the Government's noncompliance with Rule for Courts-Martial (R.C.M.) 305, I agree with the Chief Judge that the military judge erred in failing to appreciate the essential distinction between Appellant's situation and that in *United States v. Kreutzer*, 70 M.J. 444 (C.A.A.F. 2012). Like the CAAF's subsequent opinion in *United States v. Katso (Katso IV)*, 77 M.J. 247 (C.A.A.F. 2018), *Kreutzer* addressed a situation where an inchoate sentence and opinion of the service court was pending review at the CAAF. *Kreutzer*, 70 M.J. at 445–46. As described above, in Appellant's case, this court's decision setting aside his sentence ceased to be inchoate and his adjudged term of confinement was extinguished when TJAG elected not to certify the case to the CAAF and returned it to the CA.

I write separately to clarify my understanding that, although I agree with the Chief Judge that R.C.M. 305 applied in Appellant's situation, it is not because the result is controlled by the CAAF's decision in *United States v. Miller*, 47 M.J. 352 (C.A.A.F. 1997). References to *Miller* in the opinion above might be construed to mean our analysis depends on *Miller's* holding that if TJAG

---

[19] We order a corrected CMO to reflect the consolidated Specification 14 of Charge I (incorporating the original Specifications 14 and 15) that we affirmed in *Rodriguez II,* eliminate the "1" after "Specification" in Charge III, correct the language of Specification 5 of Charge I, which erroneously includes the words "or maintain" and "intimate", and to account for the additional confinement credit ordered by this opinion.

"immediately decides not to pursue a case any further, there must be immediate notice to the convening authority of the opinion of the Court of Criminal Appeals and immediate direction to release an accused or conduct a hearing under RCM 305 . . . on pretrial confinement." *Id.* at 361 (citation omitted). However, *Miller* must be understood in light of the analysis in *Kreutzer*, which specifically noted the service court in *Miller* had "reduced the appellant's sentence to a period of time which the appellant had already served." *Kreutzer*, 70 M.J. at 446 (citing *Miller*, 47 M.J. at 360)). Thus, *Kreutzer* effectively limited the holding of *Miller* to the circumstances of that case, that is, where the appellant was no longer subject to being adjudged additional confinement for the offenses of which he stood convicted beyond the confinement already served.

In my view, the outcome of Appellant's case is dictated not by *Kreutzer* or *Miller* but by the fact that, once his case was returned to the CA, Appellant was no longer under any sentence to confinement and was held "pending disposition of charges." R.C.M. 305(a). Accordingly, under existing law, his confinement was subject to R.C.M. 305. It may be that the rule in its current form is in some ways poorly fitted to a post-return situation, but I agree with the Chief Judge that we may not disregard important procedural rights of an accused because of the logistical challenges they may impose on the Government.

LEWIS, Judge (concurring in the result in part and dissenting in part):

I agree with my esteemed colleagues in the majority that the previously affirmed findings and newly approved sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). I also join the majority's finding that a corrected court-martial order is required for the reasons set forth in the majority's opinion. However, I respectfully dissent from the portion of the majority's opinion that ultimately concludes Appellant must receive 21 days of confinement credit under Rule for Courts-Martial (R.C.M.) 305(k) for noncompliance with R.C.M. 305(h) and (i).

Article 66(e), UCMJ, required The Judge Advocate General (TJAG) to instruct the convening authority to take action in accordance with this court's decision in *United States v. Rodriguez (Rodriguez II)*, ACM 38519 (f rev), 2016 CCA LEXIS 416 (A.F. Ct. Crim. App. 13 Jul. 2016) (unpub. op.), and to make a decision on whether a rehearing was impracticable pursuant to Article 66(e). However, Article 66(e) does not set forth any particular timeline for the convening authority to make the decision on rehearing. Further, Article 66(e) contains no specific requirement for the convening authority to take action on the post-trial confinement of an appellant whose sentence has been set aside and is pending a rehearing. I note that an opinion of a court of criminal appeals

(CCA) could require the convening authority or lower officials to make a specific determination on confinement at the point in time when the case is returned to the convening authority to determine the practicality for a rehearing. In my opinion, incorporating such language in a decretal paragraph would require the convening authority to take action consistent with that language under Article 66(e). But I see no such direction from this court in *Rodriguez II*. Therefore, I believe the convening authority did all that was required under Article 66(e) when she convened a general court-martial on 4 October 2016 to conduct a rehearing on sentence. Any additional requirement to address Appellant's confinement must originate from a different source of legal authority.

Similarly, I find nothing in the plain language of the definition of pretrial confinement under R.C.M. 305(a) that would apply the multiple provisions of that rule to someone with an approved sentence to confinement subsequently set aside on appeal. Quite simply, when TJAG returned Appellant's case to the convening authority on 20 September 2016 for a decision on rehearing, there was no "order of competent authority" imposing physical restraint pending disposition of charges. Assuming *arguendo* that the disposition of the charges was "pending" a convening authority decision on rehearing, Appellant still remained in confinement only because of the original post-trial confinement order. Therefore, I decline to find Appellant was in pretrial confinement, as defined by R.C.M. 305(a), as of 20 September 2016 by operation of law.

There are certainly times where our superior court has looked to R.C.M. 305 for a procedure to address an appellant who remains in confinement pending completion of appellate review. In *Moore v. Akins*, the court found no basis for "continued confinement" in granting a petition for a writ of habeas corpus. 30 M.J. 249, 254 (C.M.A. 1990). I find *Moore* distinguishable as it involved a dismissal of all charges and specifications, and a recommendation of the Clemency and Parole Board to return Moore to duty. Additionally, it involved certification of the case to our superior court under Article 67, UCMJ, 10 U.S.C. § 867. None of these facts is present in Appellant's case; most notably, he has affirmed findings of guilty and did not petition for a writ of habeas corpus. Our superior court did recognize the Government could have legitimate concerns about release from confinement pending Government appeal. It noted:

> If the situation is one in which the Government could establish a basis for pretrial confinement, then it should have the opportunity to show why the accused should be kept in confinement pending the conclusion of appellate review. This can be best handled by ordering a hearing before a military judge or a special master who can make the type of determination that would be made by a military magistrate in connection with pretrial confinement.

*Id.* at 253 (internal citation omitted). Our superior court certainly did not call for a 48-hour probable cause memorandum or a 72-hour review, and they did not set an exact timeline for the hearing when they described how this situation could be best handled. Here, the convening authority referred Appellant's case to the rehearing on 4 October 2016, at which time Appellant had the ability to seek relief from a military judge to be released from confinement under R.C.M. 305(j). Such a motion was not filed until 7 December 2016, more than two months after the convening authority ordered a review of Appellant's confinement, almost two months after trial defense counsel was detailed, and almost a month after the rehearing was docketed for arraignment and motions.

*United States v. Miller*, 47 M.J. 352, 361 (C.A.A.F. 1997), also references R.C.M. 305 use during appellate processing of a case. In *Miller*, the court noted several earlier court opinions when it wrote that decisions of a CCA are "not self-executing [as the] court issues no mandate, but its decision is forwarded to the convening authority for further action." *Id. (*quoting *United States v. Kraffa*, 11 M.J. 453, 455 (C.M.A. 1981).

*Miller* also provided explicit instructions for TJAG to take on the issue of post-trial confinement but again in a set of particular circumstances. *Id.* at 361–62. Miller's approved sentence was ultimately reassessed from eight years to 48 months of confinement by this court. *United States v. Miller*, M.J. 549, 566 (A.F. Ct. Crim. App. 1996). The United States Disciplinary Barracks (USDB) then adjusted Miller's minimum release date based on the reassessed sentence even though TJAG had certified the case to the CAAF. Our superior court described Miller's circumstances in a later case and stated that, because he "had clearly served his full term of confinement for the offenses of which he stood convicted, he could no longer be subject to punishment." *United States v. Kreutzer*, 70 M.J. 444, 446 (C.A.A.F. 2012) (citation omitted). The CAAF previously explained that under these circumstances,

> [i]f the Judge Advocate General immediately decides not to pursue a case any further, there must be immediate notice to the convening authority of the opinion of the Court of Criminal Appeals and immediate direction to release an accused or conduct a hearing under R.C.M. 305 . . . on pretrial confinement.

*Miller*, 47 M.J. at 361 (citation omitted). In Appellant's case, the 20 September 2016 memorandum signed by TJAG's designee did not provide the convening authority any direction to release Appellant or conduct a pretrial confinement hearing under R.C.M. 305.

After careful consideration, I do not find *Miller's* holding applicable to this case. First, Appellant did not have a reassessed sentence and the USDB did not adjust his release date. More critically, Appellant was facing up to 72 years

and 6 months of confinement at his rehearing. The convening authority, at action, could not approve a sentence "in excess of or more severe" than the original approved sentence of a dishonorable discharge, confinement for 27 years, and reduction to E-1. *See* Article 63, UCMJ, 10 U.S.C. § 863; R.C.M. 810(d)(1), 1107(f)(5). The confinement that could be adjudged and approved upon rehearing in this case was well beyond the confinement he had served at the time the rehearing was ordered. Appellant was ultimately sentenced to six years confinement at the rehearing.

At the rehearing, the military judge relied heavily on the CAAF's decision in *Kreutzer*. The majority distinguishes *Kreutzer* because the Government in that case appealed the CCA's decision to set aside all of the contested findings pursuant to Article 67, and Kreutzer only requested credit under Article 13, UCMJ, 10 U.S.C. § 813, and R.C.M. 305 for the time he spent on death row after the CCA set aside his sentence to death. There was undoubtedly no Government appeal in Appellant's case. But the CAAF does describe Kreutzer as "a prisoner convicted of very serious offenses with a temporarily inchoate sentence." *Kreutzer,* 70 M.J at 447. The CAAF did not state Kreutzer's previously adjudged sentence was extinguished, as if it never existed. Instead, in a footnote, the CAAF stated "[a]s noted above, that temporarily inchoate sentence was ultimately resolved to confinement for life . . . ." *Id.* at 447 n.3.

The majority opinion finds that our decision in *Rodriguez II* was no longer inchoate as of 20 September 2016. "Inchoate" means "partially completed." *Inchoate*, BLACK'S LAW DICTIONARY (7th ed. 1999). It is true that Appellant's appellate decision was complete for purposes of requiring the convening authority to act and make a rehearing determination. However, "[t]he Judicial Branch is not an executive arm but depends on the Judge Advocate General and lower officials to execute its orders." *Miller*, 47 M.J. at 361. So while a phase of Appellant's appeal was final, I am unable to conclude the sentence was extinguished on 20 September 2016, at a time when the convening authority's rehearing determination had not been made and transmittal of the original record of trial back to the convening authority had yet to be completed.

Under the circumstances of Appellant's case, I would not grant confinement credit under R.C.M. 305(k). I acknowledge this court's recent decision in *United States v. Mancini*, No. ACM 38783 (reh), 2018 CCA LEXIS 495 *(*A.F. Ct. Crim. App. 16 Oct. 2018) (unpub. op.), involved identical post-trial confinement issues on rehearing and confinement credit under R.C.M. 305(k). I did not participate in that case on appeal in any capacity due to my prior involvement in the case. As *Mancini* is an unpublished opinion, it is not binding precedent. I am also mindful of our superior court's words less than a year ago in overturning our decision to impose the "*entirety* of R.C.M. 305 procedures and penalties, crafted for pretrial confinement, on the Government in a completely different

context." *United States v. Katso (Katso IV)*, 77 M.J. 247, 250 (C.A.A.F. 2018) (citations omitted). While Appellant is not similarly situated to Katso as Appellant's appeal was no longer pending a certification decision by TJAG on 20 September 2016, and Article 57a(c), UCMJ, 10 U.S.C. § 857a(c), did not apply to him, the words of our superior court warrant caution in applying R.C.M. 305's penalties in any different context. Further, the CAAF found Katso suffered no prejudice even if the "Government should have held a continued confinement hearing sua sponte, within seven days or otherwise . . . ." *Katso IV*, 77 M.J. at 251 (citing Article 59(a), UCMJ, 10 U.S.C. 859(a)) (additional citation omitted). While the majority believes no prejudice analysis is required for Appellant to receive additional confinement credit, I would test for prejudice and find none under these circumstances. The convening authority ordered a hearing to review confinement in a reasonable time, 16 days after the 20 September 2016 memorandum was signed returning the case and a mere two days after the decision to refer the case for a rehearing. The review was conducted by a neutral and detached reviewing officer six days after new defense counsel was detailed to Appellant's case, and the reviewing officer determined Appellant should remain in confinement using the standards in R.C.M. 305(h)(2)(B). The military judge heard and denied a motion for release from confinement. Finally, the members on rehearing ultimately sentenced Appellant to six years of confinement, more than he had already served.

While not important to the above analysis, I also note the record of trial shows the convening authority's staff judge advocate did not necessarily believe that the TJAG certification decision was made on 20 September 2016. Specifically, on 6 October 2016, the staff judge advocate advised the convening authority in writing, "[o]n 3 October 2016, the Air Force Legal Operations Agency's Appellate Government office informed 502 ABW/JA that it would not appeal the case to a higher court." Ultimately, the military judge found as fact that TJAG did return the case on 20 September 2016. That finding was not clearly erroneous. But this confusion, as shown by the staff judge advocate's advice, along with the circumstances above, demonstrates a need for specific provisions in Air Force military justice policy on rehearings when an individual remains in confinement after a sentence is set aside. I intentionally do not call for any specific rule in this opinion. Those responsible for drafting policy and instituting procedures have more insight into current Air Force and joint rule

making proposals. However, from my vantage point, I am confident that additional policy or procedures would greatly improve the administration of military justice in cases involving a rehearing.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court